EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. TOLBERT.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1906.)

No. 2,256.

1. WRIT OF ERROR—DISMISSAL—DELAY.

Where, owing to a delay in the payment of the docket fee, the record on a writ of error, though lodged with the clerk in due time, was not filed until five days after the return day, but no continuance resulted or other injury to the defendant in error, the latter's motion to dismiss on that ground, not made until nearly four months after the record was filed, when the case had then been docketed and the record printed, will be denied.

2. MASTER AND SERVANT—DEATH OF SERVANT—OPERATION OF ELEVATORS—INSTRUCTIONS.

Deceased, an assistant janitor in defendant's building, was killed while attempting to operate an elevator therein on the sixth day of his employment. Deceased was 51 years of age at the time, and on each day for the first three days of his employment the head janitor personally instructed him in the operation of the elevator. On the second and third days the head janitor permitted deceased to manage the elevator in his presence, and on the fourth and fifth days deceased operated it alone. Such janitor testified that he cautioned deceased about handling the cable, and told him to be careful to pull the cable slowly until he felt the elevator move, and then increase the speed if desired, and that deceased seemed able to operate the same as well as witness could himself. Held, that defendant was not guilty of negligence in failing to properly instruct deceased as to the operation of the elevator.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

The administratrix sued the Equitable Life Assurance Society to recover damages for the death of Henry Tolbert, which she alleged was caused by the defendant's negligence. The defendant was the owner of an office building in Des Moines, Iowa, in the northwest corner of which was an elevator designed for the transportation of freight and for use in the janitor service. Tolbert was employed about May 4, 1903, as a janitor, and placed under the superintendence of Mills, the head janitor of the building. He met his death on the 9th day of May while operating the elevator, and while engaged in taking a desk and two men accompanying it to an office on an upper floor. The charges of negligence in the petition were that the deceased was wholly inexperienced in the operation of elevators, and that he did not receive sufficient instruction

to enable him to perform that service in safety; that at the entrance to the elevator upon the ground floor there was a sliding door which was out of order, in that it could not be made to close so as to form a barrier between the platform of the elevator and the exterior; that the motive mechanism of the elevator was in such defective condition that when deceased undertook to start it by the usual method it did not readily respond, but in what particular respect it was defective the plaintiff was unable to state. At the conclusion of the evidence the defendant requested the court to direct a verdict in its favor. The court declined to do so, and an exception was taken to its ruling. The jury returned a verdict in favor of the plaintiff.

George F. Henry, for plaintiff in error.

J. S. Campbell and Thomas A. Cheshire, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The administratrix moves to dismiss the writ of error upon the ground that the record was not filed and the cause docketed in this court until after the return day of the writ of error and citation. It appears that the record was lodged with the clerk in due time, but, owing to a short delay in the payment of the docket fee, it was not filed until five days after the return day. The motion to dismiss, however, was not made until nearly four months thereafter. The cause had then been docketed and the record had been printed. No continuance of the cause resulted, and no other injury or hardship to the administratrix. The motion to dismiss is therefore denied. Bingham v. Morris, 7 Cranch, 99, 3 L. Ed. 281; Pickett's Heirs v. Legerwood, 7 Pet. 144, 8 L. Ed. 638; Owings v. Tiernan, 10 Pet. 24, 9 L. Ed. 333; Andrews v. Thum, 12 C. C. A. 77, 64 Fed. 149; West Chicago St. R. Co. v. Ellsworth, 23 C. C. A. 393, 77 Fed. 664; Altenberg v. Grant, 28 C. C. A. 244, 83 Fed. 244. See, also, Incorporated Town of Gilman v. Fernald (C. C. A.) 141 Fed. 940.

The freight elevator in the office building of the defendant in the use of which the deceased met his death was operated by hydraulic power. Its structure and operation was described as follows: A steel cable ran up the side of the elevator shaft close to the edge of the elevator platform, over a pulley above, and both ends were attached to a drum at the end of a shaft in the basement of the building. Upon the shaft was a fixed wheel, with 20 odd cogs, which engaged corresponding cogs upon a movable piston valve. The pulling of the cable by the operator on the elevator platform caused the drum and cogged shaft to revolve, and this in turn operated the piston, thereby admitting water for the movement of the elevator. The entrance to the elevator upon the ground floor was equipped with a sliding door. The door, being out of order, was pushed up, and the entrance was left open. This was not dangerous, however, because the door of the hall which led to the elevator was kept locked, and the well of the elevator shaft was but slightly below the level of the ground floor of the building. The sliding doors for exit and entrance to the elevator upon the other floors of the building were kept locked. Two men not in the service of the defendant brought a desk to the

building to be placed in an office on an upper floor. The deceased undertook to take them and the desk up on the elevator. When the three of them and the desk were safely upon the elevator platform as it rested at the ground floor of the building, the deceased grasped the cable at the side of the elevator, gave it a pull, and, as the elevator did not ascend, he pulled it hard. The elevator started to ascend more rapidly than he anticipated, and he held on to the cable, with the result that he was drawn to the floor of the elevator, thrown off to the side close to the wall of the shaft, his head and shoulders encountered a cross beam in the wall, and, as the elevator reached the second floor, the bottom of the sliding door guarding the entrance at that point was forced outward by his body, and the elevator passed him and went upwards a short distance, where it was stopped by one of the other men. After the elevator passed the level of the second floor, the deceased fell back into the shaft and to the bottom, where his body was subsequently found.

There is no foundation for the charge that the defendant negligently put the deceased to work at a dangerous occupation without sufficiently instructing him. The operation of the elevator was a simple task, which did not require much skill or explanation. The deceased was 51 years of age. The uncontradicted evidence showed that before the accident he had received instruction in his work, and such as he himself deemed sufficient. On each day for the first three days of his employment Mills, the head janitor, personally gave him directions in the operation of the elevator. He went up and down with him · several times each day, and showed him how to start and how to stop it. On the second and third days Mills allowed him to manage it himself in his presence. On the fourth and fifth days the deceased used the elevator by himself. Mills also testified that he cautioned the deceased about the handling of the cable, and told him to be careful to pull it slowly until he felt the elevator move, and that he could then increase the speed if desired; also, that the deceased seemed to be able to handle it as well as he (Mills) could himself. On the sixth day, which was the day of the accident, Mills and the deceased were upon the eighth floor, when one of the men in charge of the desk came, and requested that it be taken up on the elevator. The head janitor started to go, but the deceased said: "Let me go. I know how to operate the elevator." He was allowed to go, and the accident occurred. In view of these uncontradicted facts, there was clearly no ground for this charge of negligence.

It is also said that the defendant was negligent in respect of the defective condition of the sliding door at the entrance to the elevator on the ground floor. But it is pure speculation that this condition had any connection at all with the accident. There was no proof that it did have, and the trial court so instructed the jury.

To substantiate the third charge of negligence the plaintiff offered evidence that some time before the accident two cogs were missing from the operating mechanism in the basement, and that the tendency of the defect when it came in conjunction with the cogs of the co-acting piece of machinery would be to prevent the elevator from starting

readily when the cable was pulled, and likewise prevent it from being readily stopped. The witness who so testified did not know whether this defect had been repaired or not. He was unable to say that it had not been. On the other hand, there was uncontradicted evidence on behalf of the defendant that an engineer was sent for, the elevator was shut down three or four days, and the defect was repaired. So, even if it could be said that the absence of the two cogs could have caused or contributed to such an accident, the evidence conclusively showed that there was no such defect when the accident happened. The request of the defendant for a directed verdict should have been granted.

The judgment is reversed, and the cause is remanded, with direction to grant a new trial.